## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTHONY JOHNSON,

        **Plaintiff,**

v.

**WYANDOTTE TRIBE OF
OKLAHOMA, a/k/a WYANDOTTE
NATION, d/b/a 7TH STREET
CASINO,**

        **Defendant.**

**Case No. 14-2117-DDC-TJJ**

## MEMORANDUM AND ORDER

Plaintiff brings this personal injury action against the Wyandotte Nation for injuries she sustained when she fell down a flight of stairs at the 7th Street Casino, which is located on land held in trust by the United States for the benefit of the Wyandotte Nation.  This matter comes before the Court on defendant's Motion to Dismiss (Doc. 6).  Defendant argues that the Court must dismiss plaintiff's lawsuit because defendant, a federally recognized Indian tribe, is immune from unconsented suit and, therefore, the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[1]  After considering the arguments made by both parties, the Court grants defendant's Motion to Dismiss.

### I.      Background

The following facts are taken from plaintiff's Petition filed in the District Court of Wyandotte County, Kansas, and viewed in the light most favorable to her.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the

---

[1]      Defendant also argues the Court should dismiss plaintiff's lawsuit because she has failed to exhaust tribal remedies and therefore fails to state a claim under Fed. R. Civ. P. 12(b)(6).  Because the Court determines it lacks subject matter jurisdiction over the claims asserted in this lawsuit, it declines to reach defendant's argument for dismissal under Fed. R. Civ. P. 12(b)(6).

complaint and view them in the light most favorable to the [plaintiff].") (citation and internal quotation marks omitted).  The 7th Street Casino is located on land in Wyandotte County, Kansas, and held in trust by the United States for the benefit of the Wyandotte Nation.  On February 26, 2012, plaintiff visited the 7th Street Casino to play electronic gaming machines.  As plaintiff was leaving the casino, her heel became lodged in a strip of carpet causing her to fall headlong down a flight of stairs.  As a result of the fall, plaintiff sustained injuries to her head and foot and experienced an onset of pain.  Thereafter, plaintiff filed a lawsuit against the Wyandotte Tribe of Oklahoma, a/k/a Wyandotte Nation, d/b/a 7th Street Casino in the District Court of Wyandotte County, Kansas, asserting a single claim of negligence under Kansas law.  On March 13, 2014, defendant timely filed a Notice of Removal asserting federal question jurisdiction under 28 U.S.C. § 1331, thereby removing the case from state court to this Court.

## II.     Legal Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. § 1331; 28 U.S.C. § 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations [of] subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.* at 1003 (internal citations omitted); *Los Alamos Study Group v. United States Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012).  *See also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question intertwines with the merits of case, but where the jurisdictional issue is not an aspect of the substantive claim, it does not require conversion to the summary judgment procedure).

In this case, the Court construes defendant's Rule 12(b)(1) motion as one raising a facial challenge to the factual allegations asserted in plaintiff's Petition.  *See* Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss (Doc. 7 at 2) ("A Rule 12(b)(1) motion is determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction.")

(citation and internal quotation marks omitted). Accordingly, for the purposes of deciding the motion, the Court presumes the allegations in plaintiff's Petition are true.

**III.    Analysis**

The motion seeks dismissal of this lawsuit under Fed. R. Civ. P. 12(b)(1) because defendant is a federally recognized Indian tribe and therefore, it asserts, immune from unconsented lawsuits. Defendant further argues that it has not waived its sovereign immunity and Congress has not abrogated its sovereign immunity for this tort claim. Therefore, defendant asserts, the Court lacks subject matter jurisdiction over the lawsuit.

"'Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1).'" *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007) (quoting *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001)). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (citations omitted). As a consequence, suits against tribes are barred unless: (1) the tribe unequivocally expresses a waiver; or (2) Congress abrogates the tribe's immunity. *See id.* (explaining that "without congressional authorization, the Indian Nations are exempt from suit" and "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed" (citations and internal quotation marks omitted)); *see also E.F.W.*, 264 F.3d at 1304 (citing *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997)).

"Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." *Breakthrough*

4

*Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010),

*cert. dismissed*, __ U.S. __, 132 S. Ct. 64 (2011) (citations omitted); *see also Native American*

*Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1292 (10th Cir. 2008) ("'Tribes enjoy

immunity from suits on contracts, whether those contracts involve governmental or commercial

activities and whether they were made on or off a reservation.'" (quoting *Kiowa Tribe of Okla. v.*

*Mfg. Techs., Inc.*, 523 U.S. 751, 759 (1998) (further citation omitted))).

Here, plaintiff alleges she sustained injuries at the 7th Street Casino, which is located on

land held in trust by the United States for the benefit of the Wyandotte Nation.  Pl.'s Pet. (Doc 1-

1 at ¶ 8); *see also Governor of Kan. v. Kempthorne*, 516 F.3d 833, 835–36, 838–40 (10th Cir.

2008) (explaining that the Secretary of the Interior had taken a tract of land located in Kansas

City, Kansas (the "Shriner Tract") into trust for the benefit of the Wyandotte Tribe of Oklahoma

and ordering dismissal of the lawsuit challenging the Secretary's decision for lack of

jurisdiction).  Plaintiff filed this lawsuit against a single defendant:  "The Wyandotte Tribe of

Oklahoma, also known as, The Wyandotte Nation doing business as the 7th Street Casino in

Wyandotte County, Kansas at 777 N. 7th Street."  Pl.'s Pet. (Doc. 1-1 at ¶ 2).[2]

---

[2]       Plaintiff states in her Memorandum in Opposition to Defendant's Motion to Dismiss that she has
brought this lawsuit against "three distinct, but related entities:  Wyandotte Tribe of Oklahoma,
Wyandotte Nation, and 7th Street Casino."  Pl.'s Mem. in Opp'n to Def.'s Motion to Dismiss (Doc. 12 at
1).  However, plaintiff did not name three distinct defendants in her Petition.  Pl.'s Pet. (Doc. 1-1).
Rather, she named only a single defendant:  "The Wyandotte Tribe of Oklahoma, *also known as*, The
Wyandotte Nation *doing business as* the 7th Street Casino in Wyandotte County, Kansas at 777 N. 7th
Street."  Pl.'s Pet. (Doc. 1-1 at ¶ 2) (emphasis added).
        As defendant explains and plaintiff concedes, the Wyandotte Nation once was referred to as the
Wyandotte Tribe of Oklahoma but in 1999 amended its constitution to change its name to the Wyandotte
Nation.  Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss (Doc. 7 at 1 n.1); Pl.'s Mem. in Opp'n to Def.'s
Mot. to Dismiss (Doc. 12 at 2); *see also* Constit. of the Wyandotte Tribe of Okla., art. 1 ("The name of
this sovereign tribal government shall be the Wyandotte Nation"), *available at* http://www.wyandotte-
nation.org/government/legal-documents/constitution/.  The Court may take judicial notice of this public
record.  *See Omaha Tribe of Neb. v. Miller*, 311 F. Supp. 2d 816, 819 n.3 (S.D. Iowa 2004) (taking
judicial notice of public documents including the Constitution and Bylaws of the Omaha Tribe of
Nebraska and the Corporate Charter of the Omaha Tribe of Nebraska); *see also Klamath Claims Comm. v.*
*United States*, 541 F. App'x 974, 980 n.8 (Fed. Cir. 2013) (taking judicial notice of tribal resolutions

The Department of the Interior recognizes the Wyandotte Nation as an Indian tribe.  *See Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 78 Fed. Reg. 26384-02, 26388 (May 6, 2013).  Therefore, well-settled Supreme Court precedent immunizes the Wyandotte Nation from suit.  *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754–56 (1998) (stating that "the doctrine of tribal immunity is settled law and controls this case"); *see also Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

Plaintiff appears to urge this Court to overturn this well-established precedent and abrogate the Wyandotte Nation's sovereign immunity for tortious conduct.  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss (Doc. 12 at 14) (arguing that the doctrine of sovereign immunity "should be abrogated because it violates the balance of powers between the States and the Federal government as intended by the framework of the U.S. Constitution.")  The Court is powerless to reverse well-established case law, as plaintiff suggests.  Rather, the Court is duty bound to follow controlling Supreme Court precedent.  *See, e.g.*, *Jewell v. United States*, 749 F.3d 1295, 1300 (10th Cir. 2014) (noting that the Tenth Circuit is "obligated to follow Supreme Court precedent").

Plaintiff also urges the Court to find that sovereign immunity does not apply where the alleged tortious conduct occurred "off reservation."  Plaintiff, however, concedes that the 7th Street Casino is located on land held in trust by the United States for the benefit of the Wyandotte Nation.  Pl.'s Pet. (Doc. 1-1 at ¶ 8).  The Supreme Court has recognized that its

which were publically available records of the tribes' government whose accuracy cannot be reasonably questioned (citing *Mass. v. Westcott*, 431 U.S. 322, 323 n.2 (1977)).  Because plaintiff named a single defendant in her Petition, the Court refers to the defendant in the remainder of this Memorandum and Order as "the Wyandotte Nation."

precedent has not "ever drawn the distinction between tribal trust land and reservations . . . ." *Okla. Tax Comm'n*, 498 U.S. at 511.  Instead, it has explained that "the test for determining whether land is Indian country [for purposes of tribal immunity] does not turn upon whether that land is denominated 'trust land' or 'reservation.'  Rather, we ask whether the area has been 'validly set apart for the use of the Indians as such, under the superintendence of the Government.'"  *Id.* (quoting *United States v. John*, 437 U.S. 634, 648–49 (1978)) (further internal quotation marks omitted).  In *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court held that the property at issue (which was held by the federal government in trust for the benefit of the Potawatomi Indian Tribe) was trust land that was "'validly set apart' and thus qualifies as a reservation for tribal immunity purposes."  *Id.* Likewise, plaintiff here alleges that she was injured on land held in trust by the United States for the benefit of the Wyandotte Nation, which qualifies as a reservation for tribal immunity purposes.  Therefore, the Court concludes that sovereign immunity applies to the alleged tortious conduct here because it occurred on land held in trust for the benefit of the Wyandotte Nation.

In addition, plaintiff argues that under the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), "the Indian Commerce Clause, U.S. Const., Art. I, § 8 cl. 3, did not grant congress power to abrogate State Powers retained in the Continental Congress [and] [t]he same rationale should be extended to analysis of any federal law pre-empting state legislative authority over off-reservation tortious conduct committed by Indian Tribes on non-ceded lands . . . ."  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss (Doc. 12 at 8).  But, as explained above, this case does not involve "off-reservation tortious conduct."  Plaintiff's assertion also contradicts case law recognizing that the State of Kansas has no authority to enforce its laws on land held in trust for the benefit of the Wyandotte Nation.  *See Wyandotte*

*Nation v. Sebelius*, 443 F.3d 1247, 1252, 1257 (10th Cir. 2006) (affirming district court's order enjoining the State of Kansas from exercising or asserting jurisdiction to enforce gaming laws on the Shriner Tract (which is land held in trust for the benefit of the Wyandotte Nation)).

Thus, the Court rejects plaintiff's arguments that sovereign immunity does not apply here and instead follows well-established Supreme Court precedent.  Under this Supreme Court precedent, the Wyandotte Nation is immune from suit based on sovereign immunity unless (1) the Wyandotte Nation has expressly waived its sovereign immunity, or (2) Congress has abrogated its immunity from suit.

### A.  The Wyandotte Nation Has Not Waived Its Sovereign Immunity.

Plaintiff appears to allege in her Petition that the Wyandotte Nation has waived its sovereign immunity because it "may sue or be sued" under the federal charter of the Wyandotte Tribe of Oklahoma.  Pl.'s Pet. (Doc. 1-1 at ¶ 13).  The Wyandotte Nation explains plaintiff's reference is one to the corporate charter of the Wyandotte Tribe of Oklahoma, which is a federal charter corporation.  *See* Corporate Charter of the Wyandotte Tribe of Oklahoma, *available at* http://www.wyandotte-nation.org/government/legal-documents/corporate-charter/.[3]  Under that corporate charter, the Wyandotte Tribe of Oklahoma has the power to sue and be sued.  *Id.* at § 3(b).

The Indian Reorganization Act ("IRA") provides Indian tribes the right to organize for their common welfare and to adopt a constitution and bylaws.  25 U.S.C. § 476(a).  A separate provision of the IRA authorizes Indian tribes to ratify a corporate charter issued by the Secretary of the Interior.  25 U.S.C. § 477.  The Wyandotte Nation, as a constitutional entity organized

---

[3]     The Court may take judicial notice of the Corporate Charter of the Wyandotte Tribe of Oklahoma.  *See Omaha Tribe of Neb. v. Miller*, 311 F. Supp. 2d 816, 819 n.3 (S.D. Iowa 2004) (taking judicial notice of public documents including the Constitution and Bylaws of the Omaha Tribe of Nebraska and the Corporate Charter of the Omaha Tribe of Nebraska).

under § 476(a), and the Wyandotte Tribe of Oklahoma, as a tribal corporate entity authorized under § 477, are separate and distinct. *See Ramey Constr. Co., Inc. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982); *see also Native Am. Distrib. v. Seneca-Cayuga Tobacco, Co.*, 491 F. Supp. 2d 1056, 1059 (N.D. Okla. 2007), *aff'd*, 546 F.3d 1288 (10th Cir. 2008).

Moreover, a consent to suit clause in a tribe's corporate charter does not impair the sovereign immunity of the tribe as a constitutional entity. *Ramey Constr. Co., Inc.*, 673 F.2d at 320; *Ute Distrib. Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1268 (10th Cir. 1998) (explaining that while "a 'sue and be sued' clause in a tribe's corporate charter may constitute a waiver of immunity of the tribal corporation, this waiver is limited to actions involving the corporate activities of the tribe and does not extend to actions of the tribe in its capacity as a political governing body." (citations omitted)). Therefore, the consent to suit clause in the Wyandotte Tribe of Oklahoma's corporate charter does not waive the sovereign immunity of the Wyandotte Nation, the only defendant named in this case.

Moreover, even if plaintiff had named the tribal corporate entity as a defendant in this case, it is not a proper party to the lawsuit. The Wyandotte Nation explains that the Wyandotte Tribe of Oklahoma (federal chartered corporation) does not conduct the gaming operations at the 7th Street Casino, where plaintiff claims she sustained injuries. Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss (Doc. 7 at 7). Rather, the Wyandotte Nation Gaming Ordinance authorizes only the Wyandotte Nation "to conduct all forms of Class II Gaming within Tribal Indian Lands." Wyandotte Nation Gaming Ordinance § 4(b) (June 19, 2009), *available at* http://www.nigc.gov/Reading_Room/Gaming_Ordinances.aspx#W.[4] As explained above, the

---

[4]    The Court may take judicial notice of the gaming ordinance. *See N. Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 746 n.1 (9th Cir. 2009), *cert. denied*, 559 U.S. 1068 (2010) (taking judicial notice

Wyandotte Nation has not expressly waived its immunity from suit.  Absent a waiver of

sovereign immunity, the Court lacks subject matter jurisdiction over the Wyandotte Nation in

this lawsuit.

> **B. Congress Has Not Abrogated the Wyandotte Nation's Sovereign Immunity.**

Plaintiff also appears to allege in her Petition that the Wyandotte Nation has waived its

sovereign immunity because "[t]he Wyandotte Tribe of Oklahoma has a compact with the State

of Oklahoma which allows casino patrons who are injured to seek compensation under

Oklahoma law."  Pl.'s Pet. (Doc. 1-1 at ¶ 10).  While Congress has authorized states to acquire

limited civil jurisdiction over Indian tribes under the Indian Gaming Regulatory Act ("IGRA"),

these statutory provisions apply only where the Indian tribe and the state have entered into a

compact to regulate Class III gaming activities.  Under 25 U.S.C. § 2710(d)(3)(A), an "Indian

tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being

conducted, or is to be conducted, shall request the State in which such lands are located to enter

into negotiations for the purpose of entering into a Tribal-State compact governing the conduct

of gaming activities."  The Tribal-State compact negotiated under this statute "may include

provisions relating to . . . the allocation of criminal and civil jurisdiction between the State and

the Indian tribe necessary for the enforcement of such laws and regulations."  25 U.S.C. §

2710(d)(3)(C)(ii).

Plaintiff admits in her Petition that the Wyandotte Nation does not have a compact with

the State of Kansas, and therefore "can conduct only Class II gaming activities" under the IGRA.

---

of gaming ordinance and the letter from the National Indian Gaming Commission ("NIGC") approving it because both documents are available to the public); *see also Cachil Dehe Band of Wintun Indians v. Cal.*, 547 F.3d 962, 969 n.4 (9th Cir. 2008), *cert. denied*, 556 U.S. 1182 (2009) (taking judicial notice of gaming compacts under Fed. R. Evid. 201, which permits courts to take judicial notice of records of state entities and other undisputed matters of public record (citation omitted)).

Pl.'s Pet. (Doc. 1-1 at ¶¶ 9, 15); *see also* 25 U.S.C. §§ 2703(7), 2706(b), 2710(a), (b) & (c). Because the Wyandotte Nation has not entered into a compact with the State of Kansas, it has not agreed to allocate civil jurisdiction between the State and the Indian tribe.  Therefore, the Wyandotte Nation is not subject to jurisdiction over a tort action like this one.

    In addition, the Wyandotte Nation's compact with the State of Oklahoma contains only a limited waiver for tribal sovereign immunity for certain tort and prize claims.  Gaming Compact Between the Wyandotte Nation and the State of Oklahoma, Part 6 (Jan. 6, 2006), *available at* http://www.nigc.gov/Reading_Room/Compacts.aspx.  But the Tenth Circuit has determined that nothing in these provisions "unequivocally waives the [Indian tribe's] immunity to individual civil tort suits in Oklahoma state court."  *Santana v. Muscogee (Creek) Nation, ex rel. River Spirit Casino*, 508 F. App'x 821, 822 (10th Cir. 2013), *cert. denied*, __ U.S. __, 133 S. Ct. 2038 (2013).  In *Santana,* the Tenth Circuit considered the compact between the Creek Nation and the State of Oklahoma which, like the Wyandotte Nation's compact with the State of Oklahoma, adopted the Model Tribal Gaming Compact, 3A Okla. Stat. Ann. § 281.  *Id.* at 822.  The Tenth Circuit held that the compact's waiver of tribal immunity for tort and prize claims in a "court of competent jurisdiction" did not "alone confer jurisdiction on state courts because states are generally presumed to lack jurisdiction in Indian Country."  *Id.* at 823.  Finding no other provision in the compact that clearly and unequivocally waived tribal immunity to extend jurisdiction to Oklahoma state courts, the Circuit concluded in *Santana* that no subject matter jurisdiction existed for plaintiff's civil tort claim.  *Id.* at 824.  Thus, even if the Wyandotte Nation's compact with the State of Oklahoma applied to the plaintiff's allegations here, which arise from injuries she sustained in Kansas, that compact does not waive the Wyandotte Nation's sovereign immunity for civil tort claims.

### C.  The Sovereign Immunity Exception Does Not Apply.

Plaintiff also argues in her Petition that the Wyandotte Nation does not provide a forum for redress within the State of Kansas for casino patrons injured at the 7th Street Casino and does not have a tribal court in Kansas City, Kansas.  Pl.'s Pet. (Doc. 1-1 at ¶¶ 11, 14).  Although plaintiff does not assert this argument, the Court notes that the Tenth Circuit recognized a limited exception to tribal sovereign immunity in *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980), *cert. denied*, 449 U.S. 1118 (1981), *reh'g denied*, 450 U.S. 960 (1981).  In *Dry Creek*, the plaintiffs, who were non-Indians, owned a tract of land within the boundaries of the Wind River Reservation of the Shoshone and Arapahoe Indians in Wyoming.  *Id.* at 683–84.  The plaintiffs received approval from the reservation's superintendent to build a hunting guest lodge, but the day after opening the lodge, the Tribes closed the only access road to the lodge.  *Id.* at 684.  The plaintiffs sought a remedy with the tribal court, but were refused access to it.  *Id.*  The plaintiffs then filed suit against the Tribes in state court which was removed to federal court.  *Id.*  The Tribes argued for dismissal of the case based on sovereign immunity, but the Tenth Circuit disagreed that sovereign immunity barred the case.  *Id.* at 685.  It concluded that no forum existed to settle the dispute.  *Id.*

As the Tenth Circuit later has explained, "*Dry Creek* has come to stand for the proposition that federal courts have jurisdiction to hear a suit against an Indian tribe under 25 U.S.C. § 1302, notwithstanding [the Supreme Court's decision in] *Santa Clara Pueblo*, when three circumstances are present:  (1) the dispute involves a non-Indian; (2) the dispute does not involve internal tribal affairs; and (3) there is no tribal forum to hear the dispute."  *Walton v. Pueblo*, 443 F.3d 1274, 1278 (10th Cir. 2006), *cert. denied*, 549 U.S. 1031 (2006).  But the Tenth Circuit has "emphasized the need to construe the *Dry Creek* exception narrowly . . . ."  *Id.*

The court also has explained that the rule in *Dry Creek* "has minimal precedential value," and other than in *Dry Creek* itself, the Tenth Circuit has never applied the exception in the more than thirty years since the court issued that opinion.  *See id.* (collecting cases) (internal quotation marks omitted); *see also Cohen v. Winkelman*, 302 F. App'x 820, 823 (10th Cir. 2008) ("In the nearly thirty years since that decision, we have applied the *Dry Creek* exception in only one case—*Dry Creek* itself.").

The Court declines to apply the *Dry Creek* exception here for two reasons.  First, plaintiff has not alleged a claim under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302, "which is a prerequisite that must be satisfied for the exception to trigger."  *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1139 (N.D. Okla. 2001) (citing *Dry Creek*, 623 F.2d at 685; *Enterprise Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 892 (10th Cir. 1989)).  Moreover, the Tenth Circuit has refused to apply the *Dry Creek* exception to claims that do not involve "'particularly egregious allegations of personal restraint and deprivation of personal rights'" like the allegations asserted in *Dry Creek*.  *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1346 (10th Cir. 1982) (quoting *Ramey Constr. Co., Inc. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 319 n.4 (10th Cir. 1982)).  Here, plaintiff alleges a negligence claim under Kansas law against the Wyandotte Nation, but she does not assert an ICRA claim or "particularly egregious allegations of personal restraint and deprivation of personal rights" similar to the allegations at issue in *Dry Creek*.  *Id.*  Therefore, the Court concludes that the *Dry Creek* exception to tribal sovereign immunity does not apply here.

Second, plaintiff has not alleged sufficiently that no tribal forum exists to hear the dispute.  The Tenth Circuit has emphasized that the *Dry Creek* exception applies "only where the tribal remedy is 'shown to be nonexistent by an actual attempt' and not merely by an allegation

13

that resort to a tribal remedy would be futile." *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1012 (10th Cir. 2007) (quoting *White v. Pueblo of San Juan*, 728 F.2d 1307, 1313 (10th Cir. 1984)). Therefore, to satisfy the limited exception to tribal sovereign immunity set forth in *Dry Creek*, plaintiff cannot simply assert that no forum for redress exists, as she has done in her Petition. Rather, plaintiff actually must seek adjudication in the tribal court and demonstrate that no remedy exists there. *See Miner Elec., Inc.*, 505 F.3d at 1012 (plaintiffs "must show an actual attempt [to bring an action in tribal court rather than the district court]; their assumption of futility of the tribal-court remedy is not enough."); *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992) (plaintiff "cannot simply assert that it is not subject to tribal court jurisdiction; rather, it must actually seek adjudication of this issue in tribal court."); *White v. Pueblo of San Juan*, 728 F.2d 1307, 1313 (10th Cir. 1984) (plaintiffs "at no time filed a complaint with the Tribal Council or Tribal Court" and it was "insufficient to allege that they felt that it would be futile to pursue the [tribal] remedy even if they did believe that.").

Here, plaintiff does not allege that she actually has attempted to seek redress in a tribal forum. Instead, her Petition contains the conclusory allegation that the Wyandotte Nation does not provide a forum for redress within the State of Kansas for casino patrons injured at the 7th Street Casino. Pl.'s Pet. (Doc. 1-1 at ¶ 11). In her Memorandum in Opposition to Defendant's Motion to Dismiss, plaintiff explains that the 7th Street Casino's insurer sent her counsel a letter on October 12, 2012, requesting that she complete certain documents about her claim. Pl.'s Memo. in Opp'n to Def.'s Mot. to Dismiss (Doc. 12 at 6). Then, almost a year later, plaintiff gave the insurer a recorded statement in about September 2013. *Id.* On or about October 12, 2013, plaintiff's counsel received a letter from the insurer stating that plaintiff had not submitted

the claim within the allotted time period, and therefore the insurer was unable to consider this claim.  *Id.*  Plaintiff's description of her communications with the insurance company does not suffice to show that she lacks a tribal remedy.  Plaintiff makes no allegation in her Petition that she actually attempted to bring an action in tribal court and that the remedy did not exist, as *Dry Creek*'s exception requires.  *See Miner Elec., Inc.*, 505 F.3d at 1012 (quoting *White*, 728 F.2d at 1313).  Therefore, the Court refuses to apply the *Dry Creek* exception to tribal sovereign immunity to the allegations presented here.

## IV.     Conclusion

Absent an unequivocal waiver by the Wyandotte Nation or any contrary legislative intent, the Court concludes that the doctrine of sovereign immunity bars plaintiff's suit.  Therefore, the Court grants the Wyandotte Nation's motion and dismisses this lawsuit.[5]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 6) is granted.

**IT IS SO ORDERED.**

**Dated this 8th day of October, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**

---

[5]     In her Opposition, plaintiff asks the Court to deny defendant's motion and "remand the case back to the District Court of Wyandotte County to have the [ ] federal question [resolved]."  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss (Doc. 12 at 15).  As explained above, defendant timely removed this action asserting federal question jurisdiction under 28 U.S.C. § 1331.  Defendant filed the Notice of Removal on March 13, 2014 (Doc. 1).  Under 28 U.S.C. § 1447(c), plaintiff must have filed a motion to remand within 30 days of the filing of the Notice of Removal.  Plaintiff did not do so, and the issue of remand is not before the Court.  Therefore, the Court declines to remand the case to the District Court of Wyandotte County.